IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EDWARDA LEE,

       Plaintiff,

v.                                                                         CV 14-824 WPL/KK

DR. ERNEST MONIZ, Secretary,
United States Department of Energy,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Defendant Dr. Ernest Moniz filed a motion for summary judgment with regard to Plaintiff Edwarda Lee's sole count of gender-based employment discrimination in violation of 42 U.S.C. § 2000e et seq. ("Title VII"). (Doc. 32.) Lee filed a response in opposition (Doc. 35), and Dr. Moniz filed a reply (Doc. 39). In her Complaint, Lee alleges that she suffered gender-based employment discrimination when, ten months into her employment with the National Nuclear Safety Administration ("NNSA") in Los Alamos, New Mexico, her annual leave accrual was reduced from eight hours per pay period to six hours per period. (Doc. 1.) The parties agree that Lee belongs to a protected class, but dispute whether she suffered an adverse employment action, that any such action would support an inference of discrimination, and that Dr. Moniz had a nondiscriminatory purpose for any such action.

Having considered the parties' filings and the relevant law, I grant the motion for summary judgment and dismiss this case with prejudice.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmovant must identify these facts by reference to "affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* A mere "scintilla" of evidence is insufficient to successfully oppose a motion for summary judgment. *Id.* at 252. The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

In a case such as this, where the burden of persuasion at trial would be on the nonmovant, the movant can meet Rule 56's burden of production by either (1) providing affirmative evidence negating an essential element of the nonmovant's claim or (2) showing the Court that the nonmovant's evidence is insufficient to demonstrate an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 331 (citations omitted). Evidence provided by either the movant or the nonmovant need not be submitted "in a form that would be admissible at trial." *Id.* at 324.

Rather, the content of the evidence presented must be capable of being presented in an admissible form at trial. *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006). For example, parties may submit affidavits to support or oppose a motion for summary judgment, even though the affidavits constitute hearsay, provided that the information can be presented in another, admissible form at trial, such as live testimony. *See* FED. R. CIV. P. 56(c)(4); *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010); *Trevizo*, 455 F.3d at 1160.

## BACKGROUND

Lee applied for an office manager position with the NNSA in early 2010. She had twenty years of work experience at the time: three years of federal civilian service with the Center for Disease Control, and seventeen years of uniformed service with the Public Health Service. (Doc. 32 Ex. 1 at 2 (Edwarda Lee Dep., Dec. 5, 2012).) Lee received an offer of employment in April 2010 from Christopher Castro, who worked in the Human Resources ("HR") Department of the Department of Energy. Lee retired from uniformed service with the Public Health Service before commencing employment with NNSA. (*Id.* at Ex. 2 at 4 (Edwarda Lee Dep., May 18, 2015).)

During the pre-employment process, Lee inquired as to whether she would receive eight hours of annual leave credit per pay period. (Doc. 35 Ex. 1 at 2 (Edwarda Lee Dep., May 18, 2015).) Lee testified that she "specifically asked about the eight hours of annual leave credit from [her] prior work experience," but never testified that she used the term "Service Credit for Annual Leave." (*Id.* at 3.) Additionally, Lee testified that she did not know and did not ask about the calculation the agency used to evaluate her annual leave. (Doc. 32 Ex. 1 at 5.) On a subsequent phone call, Castro informed Lee that the Processing Department had calculated her annual leave accrual to be eight hours per pay period. They did not discuss how leave was calculated.

Lee started work sometime around June 2010. She received eight hours of annual leave per pay period for the first ten months of her employment with the NNSA. David Colonna, an HR assistant, Rita Garcia, and Castro called Lee on March 17, 2011, to explain that an error had been made when computing how many hours of annual leave Lee was entitled to per pay period, which they would correct and would result in a decrease of accrued leave per pay period from eight hours to six hours.

## DISCUSSION

Where a claim of gender-based employment discrimination is not supported by direct evidence, such claims are analyzed under the burden-shifting framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). The plaintiff bears the burden of establishing a prima facie case of discrimination. *E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007). The plaintiff must "present evidence that (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011). Lee seeks to satisfy this burden using a disparate treatment theory, alleging that she was treated differently than similarly situated male coworkers. *See id.*; *Drake v. City of Fort Collins*, 927 F.2d 1156, 1160 (10th Cir. 1991). After the plaintiff makes a prima facie case, the burden shifts to the defendant to articulate "legitimate, non-discriminatory reasons for its employment decision." *Luster*, 667 F.3d at 1092. If the defendant articulates valid reasons for the employment decision, the burden shifts back to the plaintiff to present evidence "that the defendant's stated reason for its action is a pretext for discrimination." *Id.* "A plaintiff may show pretext 'by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable

4

factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons.'" *Id.* (quoting *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007)).

Notably, the articulation of a plaintiff's prima facie case may vary depending on the type of adverse action alleged to be discriminatory. *PVNF, LLC*, 487 F.3d at 800. Here, Lee will also need to prove that she complied with all requirements necessary to be eligible for Service Credit for Annual Leave ("the Credit"), including any pre-employment procedural requirements. *See, e.g.*, *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005) (requiring that Sorbo prove, as part of his prima facie case, that "his job performance was satisfactory," in addition to the other factors)

The parties agree that Lee is a member of a protected class by virtue of being female. (*See* Doc. 32 at 9.) The parties disagree, however, as to whether Lee complied with all requirements to be eligible for the Credit, whether she suffered an adverse employment action, whether any such an action would support an inference of discrimination, and whether her employer had a nondiscriminatory purpose for any such action.

**I. The Credit**

A threshold question in this case is whether Lee specifically requested the Credit. I find that she did not.

Federal employees are entitled to "annual leave with pay" which accrues at the following rates: 1) four hours per pay period for an employee with less than three years of federal service; 2) six hours per pay period for an employee with at least three, but less than fifteen, years of service; and 3) eight hours per pay period for an employee with fifteen or more years of service. 5 U.S.C. § 6303(a) (2012). Under this section, an employee who is a retired member of a

uniformed service cannot receive credit for their active duty service. *Id.* at § 6303(a)(3). For purposes of the annual leave calculation, an employee who has retired from uniformed service with the Public Health Service cannot receive credit for her active duty service. *Id.* at § 3501(2); 38 U.S.C. § 4303(16).

Pursuant to a grant of rulemaking authority, the Office of Personnel Management promulgated rules that allow federal agencies to give "newly appointed employee[s]" annual leave credit "for any prior service of such employee that would not otherwise be creditable for [annual leave] purposes." 5 U.S.C. § 6303(e)(1). There are conditions, of course. The otherwise uncreditable service must have been "performed in a position the duties of which directly relate to the duties of the position to which [the] employee is [newly] appointed," the prior service meets "other requirements as the Office [of Personnel Management] may prescribe," and if "in the judgment of the head of the appointing agency, the application of this [Credit] is necessary in order to achieve an important agency mission or performance goal." *Id.*

Under the rules promulgated by the Office of Personnel Management, the head of a federal agency "may, at his or her sole discretion, provide credit for active duty uniformed service that otherwise would not be creditable under 5 U.S.C. § 6303(a) for the purpose of determining the annual leave accrual rate" of a newly appointed employee who is a retired member of the uniformed service, including the Public Health Service. 5 C.F.R. § 630.205(b) (2014). This is the Credit at issue in this case. To validly exercise this discretion, the agency head must first determine that the skills and experience the employee possesses are 1) essential to the new position and acquired through working in a position in the uniformed services with duties that directly relate to the duties of the new position, and 2) "necessary to achieve an important agency mission or performance goal." *Id.* The employee "must provide written documentation . .

., acceptable to the agency, of . . . her uniformed service." *Id.* at § 630.205(d). The agency head must then determine the amount of service that will be credited to the employee. *Id.* at § 630.205(c). Notably, the agency head "must make the determination to approve an employee's qualifying prior work experience before the employee enters on duty." *Id.* at § 630.205(d).

The parties agree that the NNSA does not advertise the Credit and will only initiate the review process if the applicant specifically asks for the Credit. (Doc. 32 at 6; Doc. 35 at 4.) The parties further agree that the NNSA only offers the Credit if the prospective employee will not accept the job without the additional annual leave credit and there are no other highly qualified candidates. (Doc. 32 at 6; Doc. 35 at 4.)

Lee had three years of federal civilian service. Her time in uniformed service with the Public Health Service explicitly qualified as "uniformed service" for purposes of annual leave accrual. Additionally, Lee retired from uniformed service with the Public Health Service, so her time there did not count toward purposes of annual leave accrual. Based purely on 5 U.S.C. § 6303, Lee was entitled to six hours of annual leave per pay period.

Lee does not dispute that prospective employees must affirmatively inquire about the Credit before the NNSA will consider granting them the credit. (Doc. 35 at 4 (admitting that the NNSA only starts the process to determine whether it will offer a prospective employee the Credit when the employee specifically asks for the benefit).) While Lee argues that she "specifically asked for the discretionary benefit of eight hours of leave credit prior to her hiring," this argument is belied by her deposition testimony. (Doc. 35 at 2.) On May 18, 2015, Lee testified that she "asked [Castro] on [her] first call with him[] if [she] would be getting the eight hours of credit for prior work experience." (Doc. 35 Ex. 1 at 2.) She also stated that she did not "ask or have it confirmed" that she would be considered for the Credit, but that it was her

7

"assumption . . . because this creditable service military would not apply to [her]." (Doc. 32 Ex. 2 at 6.) Lee later clarified that she asked Castro, "'Do I get the eight hours?'" (*Id.* at 8.) Castro testified that he never had a conversation with Lee, prior to her start-date, where she requested the Credit. (Doc. 32 Ex. 3 at 6-7 (Christopher Castro Dep., June 8, 2015).) Nowhere in the evidence submitted by either party is there substantiation for the allegation that Lee specifically requested the Credit prior to starting at the NNSA.

Apparently in the alternative, Lee contends that she was "entitled to [the Credit] for eight hours of leave . . . because [she] had the work experience for the eight hours." (Doc. 35 at 3.) This argument is unavailing and fails to appreciate the discretionary nature of the Credit. One cannot be "entitled" to a discretionary benefit.

I find that asking about the amount of annual leave she would accrue per pay period is not equivalent, functionally or practically, to requesting a specific discretionary credit that is not advertised. Lee did not ask for the Credit.

## II. Prima Facie Case

### A. Adverse Employment Action

"While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionably adverse action. Otherwise, minor and even trivial employment actions . . . would form the basis of a discrimination suit." *MacKenzie v. City and Cty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (quotation omitted). "Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action." *Haynes v. Level 3 Comms., LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006) (quotation omitted),

*abrogated on other grounds by Bertsch v. Overstock.com*, 684 F.3d 1023 (10th Cir. 2012). The Tenth Circuit takes a "'case-by-case approach,' examining the unique factors relevant to the situation at hand" when determining whether an adverse employment action has occurred. *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (quoting *Jeffries v. Kansas*, 147 F.3d 1220, 1232 (10th Cir. 1998)).

The parties agree that Lee's employment history – her work in federal civilian service and her uniformed service with the Public Health Service – entitled her only to six hours of leave per pay period, unless she received the Credit. (Doc. 32 at 5 (Fact 15); Doc. 35 at 3 ("Plaintiff admits the allegations in paragraph fifteen of Defendant's Motion.").) The parties further agree that the Credit is a discretionary benefit. (Doc. 32 at 6 (Fact 21); Doc. 35 at 3 ("Plaintiff admits [that the Credit] is discretionary").) However, Lee contends that she was entitled to this discretionary benefit and argues that reduction of her annual leave ten months after she began employment was an adverse employment action. While Lee zealously contends that her employer could simply have "redone the calculations and kept the eight hours [of annual leave credit per pay period] in place," she cites no authority for this proposition and no support for the position that her employer could, in fact, engage in such behavior.

Dr. Moniz cites to *Neratko v. Frank*, 31 F. Supp. 2d 270 (W.D.N.Y. 1998), for the proposition that correcting an administrative mistake regarding compensation cannot be considered an adverse action under Title VII. *Id.* at 296. Lee does not discuss *Neratko* in her response. However, *Neratko* simply states that the plaintiff's claim that his employer issued erroneous paychecks did not establish that the plaintiff suffered any "materially significant disadvantage" because "plaintiff [did] not argue that the erroneous paychecks caused him to lose compensation that he had rightly earned." *Id.* The Court concluded that this allegation was a de

minimis issue that did not constitute an adverse employment action. *Id.* The *Neratko* decision does not offer any factual detail surrounding the erroneous paychecks. In context, the decision suggests that the plaintiff was underpaid – or that he felt he should have been paid more, but was not actually entitled to additional compensation.

Here, Lee failed to specifically request the Credit before beginning employment. Additionally, Lee does not suggest that any administrative error with regard to her leave calculation was made maliciously or with discriminatory animus.

Surely it cannot be that correcting an innocent administrative error that results in reduced compensation amounts to an adverse employment action when the employee was not entitled to the additional compensation. "[P]eople make mistakes and Title VII does not provide a cause of action for every human resources department error." *Orr v. City of Albuquerque*, 531 F.3d 1210, 1217 (10th Cir. 2008); *see also Horvath v. Dalton*, No. 97-cv-0441 MHP, 1999 WL 13714, at *9 (N.D. Cal. Jan. 7, 1999), *aff'd* 215 F.3d 1333 (9th Cir. 2000) ("no adverse employment action exists by the mere fact that she was asked to repay money that she was not supposed to get"); *Mayberry v. Endocrinology-Diabetes Assocs.*, 926 F. Supp. 1315, 1325 n.11 (M.D. Tenn. 1996) ("Because the deduction was merely recovery of an overpayment, it is not really an 'adverse' action at all."). Accordingly, I find that the reduction in Lee's annual leave per pay period, based on rectifying the error in her leave calculation, was not an adverse employment action.

### B. Inference of Discrimination

Even assuming that Lee complied with the procedural requirements to obtain the Credit and suffered an adverse employment action, she still must show that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Evidence giving rise to an inference of discrimination will vary from case to case. In a disparate treatment

case, "[o]ne method by which a plaintiff can demonstrate an inference of discrimination is to show that the employer treated similarly situated employees more favorably." *Luster*, 667 F.3d at 1095. To be "similarly situated," Lee must show that she was "similarly situated to [her male comparators] in all material respects." *Martinez v. N. Rio Arribe Elect. Coop., Inc.*, 139 F.3d 918, 1998 WL 45493, at *1 (10th Cir. 1998) (unpublished table decision); *Noble v. Brinker Int'l, Inc.*, 175 F. Supp. 2d 1027, 1037 (S.D. Ohio 2001).

As evidence for an inference of gender discrimination, Lee points to the fact that the NNSA did not request additional details of her work history prior to her start date, but did request additional details of the work history of five male coworkers, all of whom received the Credit. Lee argues that these men were similarly situated and "comparable" to her because Lee and the men: 1) were all newly hired employees, 2) were hired to work at the Los Alamos site, 3) made the same request regarding annual leave, 4) were hired by the same agency, and 5) dealt with the same HR department.

Dr. Moniz does not dispute that Lee and her five alleged comparators were newly hired employees of the NNSA who were hired to work at the Los Alamos site. Dr. Moniz also agrees that the five men specifically requested the Credit prior to being hired. (Doc. 32 at 8; Doc. 32 Ex. 4 at 2-3 (Timothy O'Leary Dep., June 1, 2015).) And therein lay the difference: Lee is not similarly situated to her alleged comparators because, as I have already found, she did not specifically request the Credit prior to being hired.

On this point, too, Lee fails to meet her burden of presenting a prima facie case of discrimination.

### III. Legitimate, Nondiscriminatory Reason and Pretext

Even if I found that Lee made out a prima facie case for gender-based employment discrimination, Dr. Moniz would then have the opportunity to advance a legitimate, nondiscriminatory reason for the adverse employment action of reducing Lee's annual accrued leave from eight hours per pay period to six hours per pay period. Upon a showing of a legitimate, nondiscriminatory reason for the action, the burden shifts back to Lee to show that the proffered reason is mere pretext for discriminatory animus. *Luster*, 667 F.3d at 1092

To that end, Dr. Moniz argues that this case resulted from an administrate error in calculating Lee's creditable service. The agency was then required to correct the error, pursuant to 5 U.S.C. § 6303(a), because the agency does not grant the Credit to new employees who do not ask for it (Doc. 32 Ex. 3 at 5) and cannot grant it retroactively, 5 C.F.R. § 630.205(d).

Lee responds that this argument is mere pretext based on her contention that whether her hours were calculated incorrectly in the first instance is immaterial. She contends that the NNSA could have kept her at the same level of leave accrual and reclassified the justification as to why she earned eight hours of leave per pay period. Lee argues that the NNSA is free to just redo the calculations and grant her the credit.

I find that the reason offered by Dr. Moniz is legitimate and nondiscriminatory. This is no doubt an unfortunate error on behalf of the agency with unpleasant consequences for Lee. I do not, however, agree with Lee that Dr. Moniz's contention is mere pretext. While it may be nice if a federal agency could simply recalculate leave accrual and award the Credit post hoc, the regulations clearly prohibit that. *Id.* I find that Dr. Moniz's proffered reason was not a pretext for discriminatory animus.

## CONCLUSION

As explained above, I find that Lee did not specifically request the Credit before she was hired. Based purely on her federal service pre-employment with the NNSA, Lee was entitled to six hours of annual leave accrual per pay period, not eight hours. The only way Lee could earn eight hours of annual leave per pay period would be for the agency to grant her the Credit, which must be done pre-employment. This did not happen. Lee failed to make a prima facie case of gender-based employment discrimination because there was no adverse employment action and any action did not occur under circumstances giving rise to an inference of discrimination. Even if Lee did make out a prima facie case, Dr. Moniz offered a legitimate, nondiscriminatory reason for the actions taken and I find that this reason was not mere pretext.

Therefore, I grant Dr. Moniz's motion for summary judgment and dismiss this case with prejudice.

IT IS SO ORDERED.

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.